**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LDG CORP., an Illinois corporation, d/b/a | ) | |
| CROWD CONTROL WAREHOUSE | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  1:15-cv-08367 |
| | ) | |
| v. | ) | |
| | ) | |
| CABLEORGANIZER.COM, LLC., a | ) | Jury Trial Demanded |
| Florida limited liability company, d/b/a | ) | |
| CROWD CONTROL STORE | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

LDG Corp. d/b/a Crowd Control Warehouse ("Plaintiff" or "LDG Corp.") sets out this Complaint against Cableorganizer.com, LLC d/b/a Crowd Control Store ("Defendant") as follows:

### Nature of Action

1.      This action arises out of Defendant's infringement of Plaintiff's registered trademark in violation of the Lanham Act, the federal Anti-Cybersquatting Act, the Illinois Consumer Fraud Act, the Illinois Deceptive Trade Practices Act and the common law of trademark.

### Parties

2.      Plaintiff is a corporation organized under the laws of the State of Illinois.

3.      Plaintiff is and has been engaged in the business of selling public guidance and safety products, such as stanchions, ropes and barricades, under the federally registered mark

1

CROWD CONTROL WAREHOUSE ("the Mark").

4.     Plaintiff uses the Mark in its trade name (Crowd Control Warehouse) and in connection with marketing, advertising, offering for sale and sale of its public guidance and safety products.

5.     Defendant is a limited liability company organized under the laws of the State of Florida and has a principal place of business at 6250 NW 27th Way; Fort Lauderdale, Florida 33309.

6.     Defendant sells goods highly similar or identical to those sold by Plaintiff under the name CROWD CONTROL STORE ("Infringing Mark").  Defendant also does business under the name STANCHION DEPOT.

## Jurisdiction and Venue

7.     This Court has jurisdiction over this action under 15 U.S.C. §1121, and 28 U.S.C. § 1331 and § 1338 (a) and (b) in that this case arises under the federal Lanham Act and the federal Anti-Cybersquatting Act and the trademark laws of the United States, 15 U.S.C. §1051, *et seq.*  This court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 and the general pendent jurisdiction of this Court.

8.     This Court also has jurisdiction under 15 U.S.C. § 1332(a) in that this case is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because the activities giving rise to this claim occurred in this judicial district.

2

**Factual Allegations Common to All Counts**

**Plaintiff Is a Leading Seller of Public Guidance and Safety Products**

10.     Plaintiff, founded in 2005, began selling public guidance and public safety products through its website, www.crowdcontrolwarehouse.com, in 2006.

11.     Since March 2006, Plaintiff has used the Mark in commerce in connection with the marketing, advertising, offering for sale, and sale of public guidance and public safety products. Plaintiff has used the Mark since at least that date to identify Plaintiff's retail and distributorship services for said products and to distinguish them from such services as offered by others by, among other things, prominently displaying the Mark on its website, using the Mark in its website's domain name and email addresses, and utilizing the Mark in its advertising and promotional materials, labels, invoices, purchase orders, agreements, letterhead, business cards and the like.

12.     Between 2006 and 2014, Plaintiff was a market leader in the ecommerce distribution of public guidance and public safety products, according to industry suppliers (*i.e.*, the manufacturers of the products) and Plaintiff's analysis of the market.

13.     Much of Plaintiff's success has resulted from its recognizable name and online presence. In 2006, few if any companies marketed and distributed public guidance and public safety products through the Internet, and Plaintiff quickly became a market leader by offering the widest product selection on an easy-to-use website.

14.     Plaintiff has also spent a significant amount of money advertising the Mark and the services it provides — nearly $1.7 million between 2010 and 2014. These expenditures were directed primarily to keyword advertising on the major search engines, ensuring that Plaintiff's

Mark was prominently positioned when potential customers looked for public safety products. As Plaintiff grew and became better known, Plaintiff's customers recognized and often referred to CROWD CONTROL WAREHOUSE simply as "Crowd Control."

**Plaintiff Receives Federal Trademark Registration**

15.     In order to protect the significant market share Plaintiff had achieved by 2007, Plaintiff filed an application for federal registration of the CROWD CONTROL WAREHOUSE mark with the United States Patent and Trade Office ("USPTO").

16.     On May 6, 2008, the USPTO registered the mark CROWD CONTROL WAREHOUSE on the Supplemental Register.  The registration was granted in connection with "retail store services, online ordering services and distributorships featuring products for use in crowd control and hospitality fields, namely, retractable belt barriers, wall mounted barriers, stanchions for hanging ropes, plastic stanchions and chains, sign stand and frames, steel barricades, expanding steel barricades, event fence panels, bellman carts, permanent and moveable railings and waste receptacles" in International Class 35.  A true and correct copy of this Registration is attached as Exhibit A.  The Mark received the registration number 3,424,866.

17.     On May 12, 2014, after more than five years of exclusive and continuous use of the CROWD CONTROL WAREHOUSE mark, Plaintiff applied for registration on the Principal Register.

18.     On February 27, 2015, the USPTO issued Federal Trademark Registration Number 4,687,530 for CROWD CONTROL WAREHOUSE in connection with "retail store services, online ordering services and distributorships, featuring products for use in crowd control and hospitality fields, namely, retractable belt barriers, wall mounted barriers, stanchions

for hanging ropes, plastic stanchions and chains, sign stands and frames, steel barricades, expanding steel barricades, event fence panels, bellman carts, permanent and moveable railings and waste receptacles" in International Class 35. A true and correct copy of the Registration on the Principal Register is attached as Exhibit B.

**Defendant Acknowledges Infringing Activities and Agrees to Stop**

19.     During the five years between registration on the Supplemental Register and registration on the Principal Register, Plaintiff took measures to protect and enforce the CROWD CONTROL WAREHOUSE mark. In addition to providing notice of the Mark by using "®" in its advertisements and other displays of the Mark, Plaintiff directed infringers to stop using confusingly similar marks.

20.     In early 2009, Plaintiff learned that Defendant's predecessor entity, Equicross, Inc. ("Equicross"), was employing the confusingly similar mark, CROWD CONTROL STORE, in connection with its sale and offer for sale of products highly similar or identical to those sold by Plaintiff.

21.     Equicross, which had been using the website "www.stanchiondepot.com," created a website with URL "www.crowdcontrolstore.com" and began selling public guidance and public safety products through that website as CROWD CONTROL STORE. When a potential customer attempted to access "www.stanchiondepot.com," he was automatically redirected to "www.crowdcontrolstore.com."

22.     On May 27, 2009, Plaintiff sent a letter demanding that Equicross stop using the Infringing Mark, citing, *inter alia*, many instances of actual customer confusion such as consumers mistaking Equicross' website for Plaintiff's and consumers mistakenly believing they

had placed an order from Plaintiff's website when, in fact, they had ordered from Equicross. A true and correct copy of this letter is attached as Exhibit C.

23.     In response, Equicross agreed to remove all references to CROWD CONTROL STORE and stop any advertising displaying the URL "crowdcontrolstore.com." A true and correct copy of the email reflecting Equicross' agreement is attached as Exhibit D.

24.     Equicross followed through on its agreement to cease all infringing activities in 2009. Equicross took down the "www.crowdcontrolstore.com" website, stopped all use of the mark CROWD CONTROL STORE and, upon information and belief, resumed selling products through "www.stanchiondepot.com."

**Defendant Resumes Its Infringing Activities**

25.     Despite Equicross' agreement to stop using the confusingly similar CROWD CONTROL STORE mark, Equicross and/or Defendant resumed its infringing activities by re-creating the website "www.crowdcontrolstore.com," designing the website to infringe on Plaintiff's Mark and otherwise using the Infringing Mark and/or Plaintiff's Mark to further its business.

26.     In late 2013 or 2014, Defendant acquired Equicross and continued doing business as CROWD CONTROL STORE. Upon information and belief, Equicross resumed its infringing activities prior to the acquisition to increase its revenues and make itself a more appealing target for Defendant. Since acquiring Equicross, Defendant has continued these infringing activities.

27.     Defendant uses the Infringing Mark in its website's URL ("www.crowdcontrolstore.com"), on the website itself, and in its advertising, shipping and billing materials.

6

28. CROWD CONTROL STORE and CROWD CONTROL WAREHOUSE are similar marks with identical "salient" portions, *i.e.*, the phrase "Crowd Control," and the marks connote a similar meaning of place to purchase public guidance and public safety products.

29. Both of the marks are also concurrently used on highly similar or identical products in connection with the online sale of public guidance and public safety products, and, with respect to less expensive products offered by Plaintiff and Defendant, a customer is not likely to exercise significant care in their purchase.

30. Plaintiff's Mark is also strong, as it has appeared on Plaintiff's website since early 2006, in its employees' email addresses and signatures, and has been used on Plaintiff's letterhead, invoicing and shipping materials. Plaintiff has also spent significant money advertising Plaintiff's Mark and services to the public — nearly $1.7 million between 2010 and 2014.

31. Defendant's intentional use of the Infringing Mark has created actual customer confusion regarding the source of Defendant's services, which, in turn, has caused and continues to cause reputational and financial damage to Plaintiff.

32. More glaringly, Defendant uses Plaintiff's Mark itself to confuse potential customers regarding the source of Defendant's services and trade on Plaintiff's goodwill. When a potential customer searches for "Crowd Control Warehouse" on Google, Bing or Yahoo search engines, the "paid" or "sponsored" results (*i.e.*, results preceded by the golden "Ad" logo) appear as follows:

7



(*See* https://www.google.com/#q=%22crowd+control+warehouse%22).

33.     Defendant's website is the first paid advertisement to appear.[1]  When the user clicks on that result, he arrives at the following webpage operated by Defendant:

---

[1]     Defendant's website is also the first sponsored result on Yahoo and Bing.



(*See* www.crowdcontrolstore.com/crowd-control-warehouse.aspx).

34.     This webpage contains at least four infringing uses of Plaintiff's Mark. Defendant's page title begins with Plaintiff's Mark, explained *infra* ¶¶ 37-38, such that a tabbed browser displays Plaintiff's Mark, CROWD CONTROL WAREHOUSE, in the page's main tab and, further, displays the Mark next to Defendant's logo even though the website is Defendant's, not Plaintiff's.

35.     By placing Plaintiff's Mark next to Defendant's logo in the webpage's main tab, Defendant is attempting to deceive a potential customer into thinking he is actually visiting Plaintiff's website when, in fact, he is visiting Defendant's or is creating a false impression of

9

sponsorship or affiliation between the two parties.

36. The products themselves are displayed on a page titled "Crowd Control Warehouse" in large, bold font. The "Home" label above that heading also reads "Crowd Control Warehouse."

37. At the bottom of the page, not visible on this screenshot, it reads: "Our crowd control warehouse in Florida services our customers on the east coast[.]"

38. Indeed, at least 150 uses of Plaintiff's Mark can be found in the metadata for this single page of Defendant's website. Metadata provides information about a webpage to a search engine. This metadata affects what appears in the descriptive text in the search result listing (*e.g.*, "our crowd control warehouse") and what appears in the title or tab space of a website (*e.g.*, "Crowd Control Warehouse" instead of the actual name of Defendant's business).

39. Upon information and belief, Defendant created this webpage, including the multiple unauthorized uses of Plaintiff's Mark, in 2014 or 2015.

40. This repeated and unauthorized use of the Mark is likely to cause customers to think they are purchasing goods from Plaintiff or that the two entities are affiliated with or sponsored by one another when, in fact, they are purchasing goods from Defendant.

41. Furthermore, if a user searches for Plaintiff's Mark using any of the major internet search engines, Defendant's website appears in the "organic results" (*i.e.*, not the "sponsored results") as "Crowd Control Warehouse - CrowdControlStore.com" and "www.crowdcontrolstore.com/crowd-control-warehouse.aspx" (emphasis added).

10



(*See* https://www.google.com/#q=%22crowd+control+warehouse%22).

42.     Even the text that appears in the search results below the URL states: Our crowd control warehouse in Florida services our customers on the east coast[.]"

43.     Further, like the sponsored link, the non-sponsored link leads potential customers to Defendant's website and, specifically, the webpage containing multiple uses of Plaintiff's Mark.  (*See supra*, ¶ 25).

44.     Defendant's use of the Infringing Mark and Plaintiff's Mark creates confusion regarding the source of Defendant's services because the customer mistakenly thinks he is buying from Plaintiff when he is actually buying from Defendant or that the two entities are affiliated with or sponsored by one another.

45.     Further, even if a customer becomes aware that he is purchasing products and services from Defendant, Defendant's use of the Infringing Mark and Plaintiff's Mark has created

"initial interest" in Defendant's services that would not otherwise exist except for Defendant's infringing activities.

**Defendant's Infringement Has Caused Actual Damage to Plaintiff**

46.     Defendant's infringement has had a substantial negative effect on Plaintiff's financial condition.  After peaking at over $5 million in 2013, Plaintiff's sales dropped by ten percent (10%) in 2014.  Plaintiff's gross profits dropped nearly thirteen percent (13%) over the same period, as incidents of customer confusion between Plaintiff and Defendant became a daily occurrence.

47.     By contrast, Defendant's sales of crowd control and safety products have increased dramatically in recent years.  Upon information and belief, Defendant's sales have more than doubled since it resumed its infringing activities.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114

48.     Plaintiff incorporates into this Count I each and every allegation contained in paragraphs 1-47 of this Complaint as though fully set forth herein.

49.     CROWD CONTROL WAREHOUSE is a federally registered trademark.  The Mark was placed on the Supplemental Register on May 6, 2008 and on the Principal Register on February 27, 2015.

50.     Plaintiff's Mark has obtained secondary meaning in the consumer marketplace. Plaintiff has invested in direct marketing and advertising to potential and existing customers, and has built up significant good will in the Mark.  Plaintiff has established a reputation as to the excellence of the quality of the services provided under the Mark.  As a result of its efforts,

Plaintiff has obtained consumer recognition of Plaintiff's distinctive Mark used in connection with the services and Plaintiff's Mark and the goodwill associated therewith have become one of Plaintiff's most valuable assets.

51.     Defendant uses the Infringing Mark and Plaintiff's Mark to market and sell retail store services selling products that are highly similar or identical to Plaintiff's, and both Defendant's and Plaintiff's services are provided via the internet to the general public.

52.     Plaintiff has no control over the nature and quality of the services sold by Defendant or advertised through Defendant's website.

53.     Defendant's Infringing Mark is confusingly similar to Plaintiff's Mark and Defendant's use of the Infringing Mark (and Plaintiff's Mark itself) is likely to cause (and actually has caused) confusion, mistake or deception among purchasers as to the source of origin of Defendant's services.  Defendant's acts constitute trademark infringement in violation of §32 of the Lanham Act, 15 U.S.C. §1114.

54.     Defendant has had both constructive and actual notice of Plaintiff's rights in the Mark and of Plaintiff's priority of use since at least May 2009.

55.     Defendant willfully intended to trade on Plaintiff's reputation, intended to profit from such reputation, and intended to infringe and cause confusion, cause mistake or deceive the public as to the source of origin of Defendant's services by using a mark that is confusingly similar to Plaintiff's Mark on its website or by using Plaintiff's Mark itself, on its advertising and promotion materials, in its Internet domain name, and on its Internet website.

56.     Because of the confusion as to the source of the Defendant's goods and services and because of the confusion as to affiliation between Defendant and Plaintiff, Plaintiff's

goodwill with respect to its Marks has suffered and will continue to suffer irreparable harm should Defendant's infringement be allowed to continue.

57.     Plaintiff has been and is continuing to be damaged by the Defendant's infringement, and Plaintiff has no adequate remedy at law.  Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendant from continuing its infringement of Plaintiff's Mark, is the only remedy that will afford Plaintiff meaningful relief.

58.     If not preliminarily and permanently enjoined by this Court, Defendant will continue to infringe Plaintiff's mark by using the confusingly similar Infringing Mark or Plaintiff's Mark on its advertising and promotional materials, in its domain name and on its website.

59.     As a result of Defendant's use of the Infringing Mark and Plaintiff's Mark, Plaintiff has been damaged in an amount to be determined at trial, plus interest, costs and attorneys' fees.

WHEREFORE, Plaintiff, respectfully requests that this Court grant the following relief:

A.     Enter a preliminary and permanent injunction enjoining Defendant, their offices, directors, employees and agents from (1) directly or indirectly using the Infringing Mark or Plaintiff's Mark, or otherwise copying, reproducing, imitating or using any mark confusingly similar to either mark, including without limitation, any use advertising or promotional materials and on its website, (2) directly or indirectly using the domain name www.crowdcontrolstore.com or otherwise copying, reproducing or imitating the Mark, or any mark confusingly similar to the Mark, including on the Internet, or other electronic means of dissemination, or (3) by any other act of infringement as alleged herein;

B.     That this Court, pursuant to the power granted it under 15 U.S.C. §1114 and 1118, order that all labels, signs, prints, packages, receptacles, invoices, advertisements (including search engine results), promotional materials or any other documents in the possession of Defendant, electronic or otherwise, bearing a mark that is likely to cause confusion with Plaintiff's Mark shall be delivered up and

14

destroyed;

C.    That this Court order the Defendant to transfer ownership of the domain name www.crowdcontrolstore.com to Plaintiff;

D.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Defendant be required to account to Plaintiff for any and all profits derived by Defendant by reason of said acts of infringement complained of herein;

E.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Plaintiff be awarded compensatory damages in an amount to be determined at trial;

F.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Plaintiff be awarded treble damages;

G.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Plaintiff be awarded its costs, attorneys' fees and interest; and

H.    Such other and further relief as this Court deems equitable and just.

## COUNT II
### FEDERAL UNFAIR COMPETITION AND
### FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(A)

60.    Plaintiff incorporates into this Count II each and every allegation contained in paragraphs 1-59 of this Complaint as though fully set forth herein.

61.    Since on or about March 2006, Plaintiff has used the Mark in commerce in connection with the marketing, advertising, offering for sale, and selling Plaintiff's services. Plaintiff has used the Mark continuously since that at least that date to identify Plaintiff's services and to distinguish them from those of others, by, among other things, prominently displaying the Mark on its website, on advertising and promotional  materials, on labels, packaging, invoices, purchase orders, agreements, letterhead, business cards and the like.

62.    The acts and conduct of Defendant herein alleged are unfair, untrue and deceptive

15

in that they tend to mislead, deceive and confuse, and will have the result of misleading, deceiving and confusing the public into believing the services sold by the Defendant are made by, approved by, sponsored by or affiliated with the Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63. Defendant's acts were committed with the intent to deceive and defraud the public.

64. As a consequence of the above-described acts and conduct of Defendant, Defendant has traded upon, and will continue to trade upon and gain public acceptance and other benefits from, Plaintiff's reputation, which has accordingly been and is subjected to and placed at the risk of Defendant's acts and conduct.

65. Plaintiff has been and is continuing to be damaged by the false designations of origin by Defendant and has no adequate remedy at law. Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendant from continuing the complained of actions, is the only remedy that will afford Plaintiff meaningful relief.

66. If not preliminarily and permanently enjoined by this Court, Defendant will continue to conduct acts of unfair competition and false designation of origin by use of the Infringing Mark on its advertising and promotional materials, in its domain name and on its website.

67. Due to Defendant's acts of unfair competition and false designation of origin, Plaintiff has been damaged in an amount to be determined at trial, plus interest, costs and attorneys' fees.

WHEREFORE, Plaintiff, respectfully requests that this Court grant the following relief:

A.    Enter a preliminary and permanent injunction enjoining Defendant, their offices, directors, employees and agents from (1) directly or indirectly using the Infringing Mark or Plaintiff's Mark, or otherwise copying, reproducing, imitating or using any mark confusingly similar to either mark, including without limitation, any use advertising or promotional materials and on its website, (2) directly or indirectly using the domain name www.crowdcontrolstore.com or otherwise copying, reproducing or imitating the Mark, or any mark confusingly similar to the Mark, including on the Internet, or other electronic means of dissemination, or (3) by any other act of infringement as alleged herein;

B.    That this Court, pursuant to the power granted it under 15 U.S.C. §1114 and 1118, order that all labels, signs, prints, packages, receptacles, invoices, advertisements (including search engine results), promotional materials or any other documents in the possession of Defendant, electronic or otherwise, bearing a mark that is likely to cause confusion with Plaintiff's Mark shall be delivered up and destroyed;

C.    That this Court order the Defendant to transfer ownership of the domain name www.crowdcontrolstore.com to Plaintiff;

D.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Defendant be required to account to Plaintiff for any and all profits derived by Defendant by reason of said acts of unfair competition complained of herein;

E.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Plaintiff be awarded compensatory damages in an amount to be determined at trial;

F.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Plaintiff be awarded treble damages in an amount to be determined at trial;

G.    That this Court, pursuant to the power granted it under 15 U.S.C. §1117, order that Plaintiff be awarded its costs, attorneys' fees and interest; and

H.    Such other and further relief as this Court deems equitable and just.

### COUNT III
### VIOLATION OF THE ILLINOIS UNIFORM
### DECEPTIVE TRADE PRACTICES ACT, 815 ILCS § 510/1, *et seq.*

68.    Plaintiff incorporates into this Count III each and every allegation contained in paragraphs 1-67 of this Complaint as though fully set forth herein.

69. Defendant has used, without the consent of Plaintiff, the Infringing Mark, which is confusingly similar to Plaintiff's Mark, and Defendant used the Infringing Mark in connection with its advertising and promotional materials, in its domain name and on its website, and by applying such mark to labels, signs, prints, packages, receptacles or advertisements and by intending to use such mark in connection with the sale or other distribution in the State of Illinois of its services.

70. By using the Infringing Mark, Defendant is likely to cause confusion, mistake or deceive the public as to the origin of Defendant's services.

71. Said acts of Defendants have caused direct and proximate damages to Plaintiff, as set forth herein.

72. Defendant's acts have caused and will continue to cause irreparable injury to Plaintiff's business reputation and constitute a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq.*

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Pursuant to its authority under 815 ILCS § 510/3, enter a preliminary and permanent injunction enjoining Defendant, their offices, directors, employees and agents from (1) directly or indirectly using the Infringing Mark or Plaintiff's Mark, or otherwise copying, reproducing, imitating or using any mark confusingly similar to either mark, including without limitation, any use advertising or promotional materials and on its website, (2) directly or indirectly using the domain name www.crowdcontrolstore.com or otherwise copying, reproducing or imitating the Mark, or any mark confusingly similar to the Mark, including on the Internet, or other electronic means of dissemination, or (3) by any other act of infringement as alleged herein;

B. Pursuant to its authority under 815 ILCS § 510/3, order that all labels, signs, prints, packages, receptacles, invoices, advertisements (including search engine results), promotional materials or any other documents in the possession of Defendant, electronic or otherwise, bearing a mark that is likely to cause

confusion with Plaintiff's Mark shall be delivered up and destroyed;

C.      Order the Defendant to transfer ownership of the domain name www.crowdcontrolstore.com to Plaintiff; and

D.      Grant such other and further relief as this Court deems equitable and just

## COUNT IV
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/1, *et seq.*

73.     Plaintiff incorporates each and every allegation contained in paragraphs 1-72 of this Complaint as though fully set forth herein.

74.     By committing the acts complained of herein, Defendant has violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*

75.     Said acts of Defendants have caused direct and proximate damage to Plaintiff, as set forth herein.

WHEREFORE, Plaintiff, respectfully requests that this Court grant the following relief:

A.      Pursuant to its authority under 815 ILCS § 505/10a, enter a preliminary and permanent injunction enjoining Defendant, their offices, directors, employees and agents from (1) directly or indirectly using the Infringing Mark or Plaintiff's Mark, or otherwise copying, reproducing, imitating or using any mark confusingly similar to either mark, including without limitation, any use advertising or promotional materials and on its website, (2) directly or indirectly using the domain name www.crowdcontrolstore.com or otherwise copying, reproducing or imitating the Mark, or any mark confusingly similar to the Mark, including on the Internet, or other electronic means of dissemination, or (3) by any other act as alleged herein;

B.      Pursuant to its authority under 815 ILCS § 505/10a, order that all labels, signs, prints, packages, receptacles, invoices, advertisements (including search engine results), promotional materials or any other documents in the possession of Defendant, electronic or otherwise, bearing a mark that is likely to cause confusion with Plaintiff's Mark shall be delivered up and destroyed;

C.      Pursuant to its authority under 815 ILCS § 505/10a, order the Defendant to

transfer ownership of the domain name www.crowdcontrolstore.com to Plaintiff;

D.    Pursuant to its authority under 815 ILCS § 505/10a, order that Plaintiff be awarded compensatory damages in an amount to be determined at trial;

E.    Pursuant to its authority under 815 ILCS § 505/10a, order that Plaintiff be awarded punitive damages in an amount to be determined at trial;

F.    Pursuant to its authority under 815 ILCS § 505/10a, order that Plaintiff be awarded its costs, attorneys' fees and interest; and

G.    Such other and further relief as this Court deems equitable and just.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT

76.    Plaintiff incorporates into this Count V each and every allegation contained in paragraphs 1-75 of this Complaint as though fully set forth herein.

77.    Defendant's acts, as pleaded above, constitute trademark infringement in violation of the common law of Illinois.

78.    Said acts of Defendants have caused direct and proximate damage to Plaintiff, as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.    Enter a preliminary and permanent injunction enjoining Defendant, their offices, directors, employees and agents from (1) directly or indirectly using the Mark or any mark confusingly similar to the Mark, including without limitation any use in its advertising or promotional materials in its domain name and on its website, (2) directly or indirectly using the domain name www.crowdcontrolstore.com, or otherwise copying, reproducing or imitating the Mark, or any mark confusingly similar to the Mark on the Internet, or other electronic means of dissemination, or (3) by any other act of infringement as alleged herein;

B.    That Defendant be required to account to Plaintiff for any and all profits derived by Defendant by reason of said acts of infringement complained of herein;

C.    That Plaintiff be awarded compensatory damages in an amount to be determined

at trial;

D.     That Plaintiff be awarded punitive damages in an amount to be determined at trial; and

E.     Such other and further relief as this Court deems equitable and just.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION

79.     Plaintiff incorporates into this Count VI each and every allegation contained in paragraphs 1-78 of this Complaint as though fully set forth herein.

80.     Defendant's acts, as pleaded above, constitute unfair competition in violation of the common law of Illinois.

81.     Said acts of Defendants have caused direct and proximate damage to Plaintiff, as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     Enter a preliminary and permanent injunction enjoining Defendant, their offices, directors, employees and agents from (1) directly or indirectly using the Mark or any mark confusingly similar to the Mark, including without limitation any use in its advertising or promotional materials in its domain name and on its website, (2) directly or indirectly using the domain name www.crowdcontrolstore.com, or otherwise copying, reproducing or imitating the Mark, or any mark confusingly similar to the Mark on the Internet, or other electronic means of dissemination, or (3) by any other act of infringement as alleged herein;

B.     That Defendant be required to account to Plaintiff for any and all profits derived by Defendant by reason of said acts of infringement complained of herein;

C.     That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

D.     That Plaintiff be awarded punitive damages in an amount to be determined at trial; and

E.     Such other and further relief as this Court deems equitable and just.

## COUNT VII
### FEDERAL ANTI-CYBERSQUATTING ACT, 15 U.S.C. § 1125 (D)

82.    Plaintiff incorporates into this Count VII each and every allegation contained in paragraphs 1-81 of this Complaint as though fully set forth herein.

83.    Defendant's acts, as pleaded above and including its registration of the domain name www.crowdcontrolstore.com, constitute a violation of the Federal Anti-Cybersquatting Act, 15 U.S.C. § 1125(d).

84.    Said acts of Defendants have caused direct and proximate damage to Plaintiff, as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.    Enter a preliminary and permanent injunction enjoining Defendant, their offices, directors, employees and agents from directly or indirectly using the domain name www.crowdcontrolstore.com, or any other domain name containing any mark confusingly similar to Plaintiff's Mark on the Internet, or other electronic means of dissemination;

B.    That Plaintiff be awarded compensatory damages in an amount to be determined at trial; and

C.    Such other and further relief as this Court deems equitable and just.

## COUNT VIII
### BREACH OF CONTRACT

85.    Plaintiff incorporates into this Count VIII each and every allegation contained in paragraphs 1-84 of this Complaint as though fully set forth herein.

86.    On May 27, 2009, Plaintiff sent a letter demanding that Defendant stop using the Infringing Mark, citing, *inter alia*, many instances of actual customer confusion such as consumers mistaking Defendant's website for Plaintiff's and consumers mistakenly believing

22

they had placed an order from Plaintiff's website when, in fact, they had ordered from Defendant's website. (Ex. C).

87. On June 3, 2009, in an email response to Plaintiff's demand, Defendant agreed to remove all references to CROWD CONTROL STORE and stop any advertising displaying the URL "crowdcontrolstore.com" in exchange for Plaintiff's agreement not to enforce its rights under federal and state law. (Ex. D) ("As agreed, I have removed references to "crowd control store" and have stopped advertising displaying the crowdcontrolstore.com url . . . these actions represent . . . an effort to resolve the issue in lieu of expensive and time consuming litigation").

88. Defendant violated this agreement by resuming its use of the Infringing Mark and by continuing to advertise using the URL "www.crowdcontrolstore.com." Defendant's violation of this agreement is ongoing.

89. By not pursuing legal action until Defendant resumed its infringement, Plaintiff fulfilled all of its obligations under the agreement.

90. As a result of Defendant's breach and resumption of its use of the Infringing Mark, Plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in its favor and against Defendant and award Plaintiff damages caused by Defendant's breach of the agreement and that the Court grant Plaintiff any other and further relief that it deems just and proper.

## COUNT IX
### SPECIFIC PERFORMANCE

91.　　Plaintiff incorporates into this Count IX each and every allegation contained in paragraphs 1-90 of this Complaint as though fully set forth herein.

92.　　On May 27, 2009, Plaintiff sent a letter demanding that Defendant stop using the Infringing Mark, citing, *inter alia*, many instances of actual customer confusion such as consumers mistaking Defendant's website for Plaintiff's and consumers mistakenly believing they had placed an order from Plaintiff's website when, in fact, they had ordered from Defendant's website.  (Ex. C).

93.　　On June 3, 2009, in an email response to Plaintiff's demand, Defendant agreed to remove all references to CROWD CONTROL STORE and stop any advertising displaying the URL "crowdcontrolstore.com" in exchange for Plaintiff's agreement not to enforce its rights under federal and state law.  (Ex. D) ("As agreed, I have removed references to "crowd control store" and have stopped advertising displaying the crowdcontrolstore.com url . . . these actions represent . . . an effort to resolve the issue in lieu of expensive and time consuming litigation").

94.　　Defendant violated this agreement by resuming its use of the Infringing Mark and by continuing to advertise using the URL "www.crowdcontrolstore.com."  Defendant's violation of this agreement is ongoing.

95.　　By not pursuing its legal rights until now, Plaintiff fulfilled all of its obligations under the agreement.

96.　　Plaintiff's injury caused by Defendant's infringement of Plaintiff's Mark is by its very nature irreplaceable and not susceptible to adequate measurement for remedy at law.  If the

24

Court does not order Defendant to perform under the settlement agreement, Plaintiff will suffer future infringement by Defendant with no ability to be compensation for such infringement until after it occurs.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in its favor and against Defendant and that this Court order Defendant to comply with the terms of the agreement, including but not limited to Defendant's removal of all references to CROWD CONTROL STORE and that the Court grant Plaintiff any other and further relief that it deems just and proper.

### COUNT X
### PROMISSORY ESTOPPEL

97.     Plaintiff incorporates into this Count X each and every allegation contained in paragraphs 1-96 of this Complaint as though fully set forth herein.

98.     On May 27, 2009, Plaintiff sent a letter demanding that Defendant stop using the Infringing Mark, citing, *inter alia*, many instances of actual customer confusion such as consumers mistaking Defendant's website for Plaintiff's and consumers mistakenly believing they had placed an order from Plaintiff's website when, in fact, they had ordered from Defendant's website.  (Ex. C).

99.     On June 3, 2009, in an email response to Plaintiff's demand, Defendant agreed to remove all references to CROWD CONTROL STORE and stop any advertising displaying the URL "crowdcontrolstore.com."  (Ex. D).

100.     In reliance on Defendant's promise to remove all references to the Infringing Mark and stop any advertising displaying the URL "www.crowdcontrolstore.com," Plaintiff did

25

not seek an injunction to prevent any future infringement by Defendant or pursue any other legal action against Defendant.

101.    Because Defendant's promise was given to avoid litigation arising from its infringement of Plaintiff's Mark, such reliance by Plaintiff on Defendant's promise was expected and foreseeable.  (Ex. D) ("these actions represent . . . an effort to resolve the issue in lieu of expensive and time consuming litigation").

102.    Plaintiff relied on Defendant's promise to its detriment as Defendant resumed the very activities it promised to stop, which has resulted in ongoing financial and reputational damage to Plaintiff.

103.    Defendant's promise to remove all references to the Infringing Mark and stop any advertising displaying the URL "www.crowdcontrolstore.com" must be enforced in order to avoid the injustice in the form of Defendant's continuing and unfettered infringement of Plaintiff's Mark and the resulting financial and reputational damage to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in its favor and against Defendant and that this Court order Defendant to comply with the terms of the agreement, including but not limited to Defendant's removal of all references to CROWD CONTROL STORE and that the Court grant Plaintiff any other and further relief that it deems just and proper.

Respectfully submitted,

LDG CORP., an Illinois Corporation, d/b/a
CROWD CONTROL WAREHOUSE

By:   /s/ Colin M. Seals
      One of Its Attorneys

Stan Sneeringer
Colin M. Seals
PEDERSEN & HOUPT, P.C.
161 N. Clark St., Suite 2700
Chicago, IL  60601
(312) 641-6888